UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE WALKER, | ) | CASE NO. 3:12-CV-2075 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 19). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Elaine Walker's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I. INTRODUCTION & PROCEDURAL HISTORY

In February 2008, Elaine Walker ("Plaintiff" or "Walker") filed an application for a Period of Disability and Disability Insurance benefits alleging that she became disabled on November 1, 2002, due to hypoparathyroidism and adrenal gland problems. (Tr. 10, 62, 183). The Commissioner found that her date last insured for Disability Insurance benefits was December 31, 2007. (Tr. 10-21). Walker's application was denied initially and upon reconsideration. (Tr. 64-66, 71-73). Afterwards, Plaintiff timely requested and was granted a hearing before an Administrative Law Judge (the "ALJ") (Tr. 74), but it was postponed to

November 18, 2010. (Tr. 30, 58-61). At the hearing, Plaintiff, represented by counsel, appeared and testified. (Tr. 32-53). Vocational Expert, William J. Kiger, M.S., (the "VE"), also appeared and testified at the proceeding. (Tr. 53). After reviewing the record of evidence before him, the ALJ issued a written decision denying Walker's application for benefits, finding that she was not disabled because she could perform her past relevant work as an administrative clerk and a general office clerk through her date last insured. (Tr. 10-21). After the Appeals Council denied Plaintiff's request for review, the ALJ's December 8, 2010 decision became the final decision of the Commissioner. (Tr. 1-6). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).

Plaintiff was born on January 6, 1950, making her a "person closely approaching advanced age" for Social Security purposes. (Tr. 27-28, 62); 20 C.F.R. §§ 404.1563(c). Walker has a high school education and has past relevant work (PRW) as an office clerk and as an office manager for a local newspaper. (Tr. 34-35, 54, 184, 193).

## II. ALJ's DECISION

After applying the five-step sequential analysis[1] to Plaintiff's application, the ALJ determined that Plaintiff was not disabled. (Tr. 9-19). Before proceeding through the analysis,

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

the ALJ held that Plaintiff's insured status ended on December 31, 2007. (Tr. 12). At step one of the sequential analysis, the ALJ ruled that Walker had not engaged in substantial gainful activity since November 1, 2002, her alleged disability onset date. (Tr. 12). Next, at step two, the ALJ determined that Plaintiff suffered from four severe impairments: status post laparoscopic adrenalectomy and resection, status post total thyroidectomy, coronary artery disease, and status post arthroscopy with partial media meniscectomy of the left knee. (*Id.*). But, at step three, the ALJ found that none of these impairments, individually or in combination, met or equaled one of the enumerated listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Before moving to step four, the ALJ concluded that Walker retained the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) subject to the following: (1) the claimant is able to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; (2) the claimant is able to sit, stand, and walk for 6 hours each in an 8-hour workday; and (3) the claimant is unable to perform work requiring exposure to moving machinery or unprotected heights. (Tr. 14). At step four, the ALJ held that Plaintiff was capable of performing past relevant work as an administrative clerk and a general office clerk through her date last insured of December 31, 2007, because this past relevant work did not require the performance of work-related activities precluded by Walker's residual functional capacity. (Tr. 19).

---

(4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence

4

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

V. ANALYSIS

Plaintiff challenges the ALJ's disability denial on three grounds. To begin, Walker maintains that the ALJ failed to properly evaluate her credibility. Next, Plaintiff argues that the ALJ erred by failing to find her endocrinal conditions were severe impairments. Third, Walker submits the ALJ erred by failing to properly evaluate the State Agency's residual functional capacity assessment.

A. Credibility

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* SSR 96-7p).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. § 404.1529(a); *Rogers*, 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ should

5

consider the following factors in evaluating the claimant's symptoms:  the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians.  *Id.*; *see Felisky*, 35 F.3d at 1039-40; SSR 96-7p.

Here, the ALJ applied the two-step test and at step two concluded that Walker's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible.  When making his credibility determination, the ALJ considered the factors listed in SSR 96-7p and all of the evidence in the record.  The ALJ's opinion provided a number of good reasons for discrediting Plaintiff's testimony.  Despite the ALJ's reasonable justifications, Plaintiff alleges that the ALJ committed three specific errors and thus his finding was not supported by substantial evidence.  The Court finds that Walker's allegations lack merit.

First, Walker takes issue with the ALJ's references to her daily activities, specifically related to care Plaintiff provided to her elderly parents.  For example, the ALJ stated that "the claimant reported feeling stress in November 2008 due to caring for her elderly parents," however she "denied ever providing care for her parents in her testimony." (Tr. 19).  Plaintiff maintains the ALJ is "inaccurate" and points to testimony during the hearing wherein Plaintiff states that she takes her father to get groceries and "when he wants to do a load of clothes, I'll turn it on for him and then I'll turn his dryer." (Pl. Brief at 11, Tr. 42-43).

Next, Plaintiff faults the ALJ's assertion that the "totality of the evidence documents that the claimant's medically determinable impairments are not sufficiently severe to preclude her from engaging in strenuous activities such as regularly babysitting two children and bowling." (Tr. 18).  Plaintiff points out that she testified that she previously babysat her seven- and eight-year-old grandchildren; however, "they were old enough that I didn't have to do anything for them." (Tr. 42).  Plaintiff also points out that

6

the record contains only one reference to her bowling in November 2002, which predated the requested amended onset date of disability of December 12, 2005.[2]

While the Court agrees that a fair reading of the Plaintiff's testimony would not likely support a conclusion that Plaintiff "denied ever providing care for her parents in her testimony," the ALJ was entitled to weigh Plaintiff's various statements on the issue of daily activities in making his credibility determination.  For example, the ALJ noted a statement in the record, attributed to Walker, that she felt stressed over doing everything for her parents who live next door. (Tr. 19, 502).  Similarly, when addressing the Plaintiff's activity related to childcare, the ALJ evaluated Plaintiff's testimony in relation to other statements in the record about Plaintiff babysitting. (*See, e.g.*, Tr. 308, 564, 567, 585).  Even though, on its face, the one-time comment regarding Plaintiff going bowling on November 20, 2002 (Tr. 597) would not appear relevant to the issue of Plaintiff's actual limitations assuming an onset date in 2005, the ALJ could appropriately consider how Plaintiff bowling shortly after originally maintaining she was disabled as of November 1, 2002, bore on her credibility. (Tr. 10). The ALJ further noted Plaintiff's numerous inconsistent statements regarding the extent of her smoking as a basis for finding Plaintiff less than completely credible. (Tr. 18-19).  The Court rejects Plaintiff's suggestion that because she periodically quit smoking, (Pl. Brief at 12), the ALJ was not entitled to weigh the impact of her multiple statements when assessing credibility.

Similarly, despite Plaintiff's claims to the contrary, the Court finds that the ALJ's determination that she was neurologically intact, with normal strength and range of motion in all extremities, no muscle atrophy or deformity, and no motor, reflex or sensory deficits, was well supported and provided good reasons for rejecting Plaintiff's allegations of greater limitation.  Here, pursuant to SSR 96-6p, the ALJ specifically relied upon a state agency consultant who is well-qualified by training and experience in

---

[2] Although the ALJ's decision failed to specifically acknowledge Plaintiff's request to so amend her onset date of disability (See Tr. 115), the Court observes that during the hearing, the ALJ and Plaintiff's counsel frequently focused the claimant's attention to the time period between 2005 and 2007.  In any event, the Court does not find this issue to be material to the outcome.

7

reviewing the objective record to formulate an opinion regarding such limitations.  (Tr. 18, 454-61). Plaintiff fails to point to any medical opinion evidence sufficient to contradict the ALJ's decision to discount Plaintiff's claimed limitations.  Nevertheless, the ALJ did not fully reject Plaintiff's complaints and maintains that he adequately addressed any meritorious claims in the residual functional capacity finding.  This Court is required to accord great deference to the ALJ's credibility determinations.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1977).  Finding that the ALJ's credibility determination is well-supported by the record, the Plaintiff's request for remand on this basis is denied.

### B. ALJ's Residual Functional Capacity Determination

#### 1. Step Two Severe Impairment Determination

The ALJ identified the following severe impairments through Plaintiff's date last insured:  status post laparoscopic adrenalectomy and resection, status post total thyroidectomy, coronary artery disease, and status post arthroscopy with partial media meniscectomy of the left knee.  Walker argues that the ALJ erred by failing to find complaints associated with her thyroid and adrenal diseases as severe impairments at step two of the sequential evaluation analysis. (Pl Br. at 7).  To be sure, it is well-established that this Circuit views the step two determination as a "de minimis hurdle in the disability determination process." *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table) (*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  Thus, a claimant's impairment should only be labeled non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  However, the ALJ's failure to label one's condition as a severe impairment does not constitute reversible error when the ALJ determines that the individual has at least one other severe impairment and continues to evaluate both Plaintiff's severe and non-severe impairments during the remaining steps in the evaluation analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Beyond listing Plaintiff's

laproscopic left adrenalectomy on February 8, 2005 and a December 12, 2005 thyroidectomy, Plaintiff fails to cite any medical report or opinion by a medical professional expressing any limitations associated with such procedures during the relevant period. Although the Plaintiff does complain of post-procedure "pain and numbness in her hands" and/or diarrhea depending upon whether she is compliant in taking prescribed magnesium supplements, (Tr. 439-40), in the absence of objective limitations demonstrating how such symptoms impact Plaintiff's ability to work, the record supports the ALJ's decision to refrain from finding such complaints to be severe impairments.

Even assuming *arguendo* that the ALJ's failure was error, such an omission does not warrant remand. After the ALJ has determined that the claimant suffers from at least one impairment, the ALJ must continue with the remaining steps in the sequential evaluation process, considering all of the claimant's impairments, severe and not severe. *Maziarz*, 837 F.2d at 244; *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.' " *Fisk*, 253 F. App'x at 583. As will be seen in the following section, Plaintiff's alleged limitations were thoroughly evaluated throughout the balance of the ALJ's severe impairment and RFC analysis.

### 2. The ALJ's RFC Determination

In proceeding along the sequential analysis, the Social Security Regulations provide that a claimant may be deemed disabled when the claimant's impairments combine to produce the medical equivalent of a listed impairment. As the Sixth Circuit has long recognized, "[a]n impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986); 20 C.F.R. § 404.1526(b). The question of equivalency must be established by medical evidence. *See id.*; *Zapf v. Comm'r of Soc. Sec.*, 145 F.3d 1335 (6th Cir. 1998) (Table). Moreover, at this step, it is the claimant's burden to provide evidence showing that she equals or meets the listing. *Retka v. Comm'r of*

9

*Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (*citing Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).

In the instant case, the ALJ determined that, through her date last insured of December 31, 2007, the claimant had the RFC to perform medium work as defined in 20 CFR 4040.1567(c) with the following limitations: (1) the claimant is able to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; (2) the claimant is able to sit, stand and walk for 6 hours each in an 8-hour workday; and (3) the claimant is unable to perform work requiring exposure to moving machinery or unprotected heights. The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. § 404.1545; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ is charged with the ultimate responsibility of determining a claimant's residual functional capacity. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); 20 C.F.R. § 404.1546(c). The ALJ's RFC finding will stand where it is supported by substantial evidence. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986). In determining that Plaintiff's medically determinable impairments are inconsistent with Plaintiff's allegations of disability, the ALJ relied upon objective medical evidence in the record. For example, he noted that Plaintiff was repeatedly found neurologically intact, with normal strength and range of motion in all extremities, no muscle atrophy or fedromity, no motor, reflex, or sensory deficits, and with no evidence that claimant required assistive devices, prior to her date last insured. (Tr. 16).

Despite Walker's claims that the ALJ erred by failing to name certain of her endocrinal conditions as severe impairments at step two of the sequential evaluation analysis, in making his functional capacity assessment the ALJ continued to evaluate Plaintiff's complaints of abdominal pain, nausea, and diarrhea attributable to her thyroid and adrenal diseases prior to the date last insured. The ALJ found that claimant's medically determined impairments could reasonably be expected to cause the alleged symptoms, however, he rejected Plaintiff's claims regarding the limiting effects of such symptoms. The ALJ noted that Plaintiff denied post-surgical complications related to her adrenalectomy

procedure in March 2005 and Plaintiff's report in June of 2005 that she was feeling better since undergoing the procedure. (Tr. 308). In October 2005, Walker continued to do well. By January 19, 2006, Plaintiff reported feeling better after undergoing the thyroidectomy procedure, with no complaints and improved symptoms. (Tr. 277). Plaintiff's endocrinal conditions were described as asymptomatic in December 2006. (Tr. 381). The ALJ further noted that Plaintiff reported doing well in May 2007 and a treating source opined in July 2007 that her alleged symptoms were not related to her endocrinal conditions. (Tr. 16).

As Plaintiff points out, the record does reflect complaints of post-procedure complications. For example, the Plaintiff complained of incontinence and diarrhea during a post-surgical consultation on January 1, 2006 and then again in August and October of 2007. (Tr. 432, 439). Additionally, Plaintiff notes that following a colonoscopy on December 4, 2007, Dr. Robert Neidich, M.D., wrote that the procedure suggested ileal Crohn's disease, a suspected basis for Plaintiff's diarrhea. (Tr. 431). Nevertheless, Plaintiff's complaints alone do not constitute objective evidence, and it remains the ALJ's obligation to weigh the evidence and to determine whether Plaintiff established disability prior to the date last insured. Similarly, the mere diagnosis of an impairment does not establish either the condition's severity or its effect on Plaintiff's functioning. *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007).

To further the claim that the RFC failed to properly include all of her severe limitations, Plaintiff alleges that the ALJ failed to properly evaluate the state agency physician non-examining consultant's residual functional capacity assessment. There is no dispute that the Social Security Regulations recognize state agency physicians and psychologists are "highly qualified physicians and psychologists who are experts in Social Security disability evaluation." *See* 20 C.F.R. § 404.1527(e)(2)(i) and SSR 96-6p. Here, the ALJ adopted the opinion of the state reviewing physician in formulating Plaintiff's RFC limitations, determining that no medical source contradicted or opined the existence of greater limitations prior to Plaintiff's date last insured. (Tr. 18). Plaintiff, however, maintains the ALJ violated Social Security Ruling 96-6p when he "failed to account for the BDD reviewing physician's limitation that the

Plaintiff requires access to a bathroom." (Tr. 456).  The Court concludes that such omission is insufficient to warrant remand.

As pointed out by the Defendant, an ALJ must provide evidence to support his findings to allow for meaningful judicial review of his decision; however, he is not required to discuss every tidbit of evidence he used in reaching his decision.  *Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Beyond offering Plaintiff's own statements, which the ALJ did not fully accredit, the Plaintiff fails to point to any medical opinion assigning specific limitations on Plaintiff's ability to work because of incontinence or diarrhea.  It was Plaintiff's burden to prove the existence of a disabling condition within the relevant period, expected to last for a period of twelve months.  20 C.F.R. § 404.1505.  Unfortunately, she has not come forward with proof to satisfy her burden.  For example, although represented during the hearing, Plaintiff's counsel failed to specifically examine the VE regarding the need for Plaintiff to take bathroom breaks, beyond eliciting a response from the VE that an individual who would be off task approximately ten-percent of the day, would be "excessive." (Tr. 56-57).  Additionally, Plaintiff has not shown how a reference to "needing access to a bathroom" would erode Plaintiff's ability to perform her past work or the numerous jobs determined to be within her ability as of the date last insured. (Tr. 20)

To be sure, despite Plaintiff's post-procedure reports of improvement, she periodically complained of incontinence and diarrhea which continued beyond her date last insured.  Yet, the existence of this evidence does not compel the undersigned to overturn the ALJ's decision.  It is very well possible that the record may contain evidence which supports a different conclusion than that reached by the ALJ.  However, so long as the ALJ's decision is supported by evidence which "a reasonable mind might accept as adequate to support [the] conclusion" it must upheld.  *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (*citing Richardson, supra*, 402 U.S. at 401).  "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

12

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

                                                        s/ Kenneth S. McHargh
                                                        Kenneth S. McHargh
                                                        United States Magistrate Judge

Date: October 25, 2013.